### OREN H. RILEY *v.* THE SPRINGFIELD SAVINGS BANK.

*James D. Spooner* and *Howard H. Hamlin* (*Mr. Hamlin* orally), for the plaintiff.

*Ira G. Colby* (by brief and orally), for the defendant.

MARBLE, J. In September, 1928, the plaintiff was engaged in building a house for William B. Whitney in Charlestown. Whitney, when requested by the plaintiff to make a payment on account of the work done, stated that he "was going to get money." Shortly thereafter, the defendant's treasurer called the plaintiff by telephone and asked if the bank let him or Whitney "have eighteen hundred dollars and the rest when the barn was finished" if he "would agree

not to put a lien on the place." The plaintiff replied that he would "not put a lien on it" if he "got the eighteen hundred dollars."

He testified that "the Springfield bank said when the barn was completed" he "would have the rest of it." The barn was not included in the plaintiff's contract with Whitney, but was built either by Whitney himself or by some builder for him after the plaintiff had finished work on the house. The treasurer testified that he merely asked the plaintiff if he "would promise not to file a mechanic's lien," and that nothing was said about the bank's paying him.

On September 5, after the telephone conversation, the plaintiff's clerk drew up a document worded as follows: "To whom it may concern: I, O. H. Riley, do agree not to place a lien on property of W. B. Whitney of Charlestown, if Mr. Whitney receives a loan from the Springfield Bank, to apply on my account."

The plaintiff signed this document and delivered it to Whitney, who in turn presented it to the defendant. Whitney then executed a mortgage to the defendant for $3,500, dated September 8, 1928. He received $1,650 at that time. Out of this money he paid the plaintiff only $800. The bank made no effort to see that any part of the loan was turned over to the plaintiff.

Whitney did not testify. It was suggested at the trial that the mortgage covered several unsecured loans which the bank had previously made to him. The treasurer testified that he "couldn't tell for sure" whether this was so; that the bank probably paid the balance to Whitney later in cash, but that there was no record of any payment except the canceled check for $1,650. Whitney failed to pay the mortgage note. The bank foreclosed and bid in the property at the foreclosure sale.

The plaintiff refrained from exercising his rights under P. L., c. 217, s. 12, and it could be found that his forbearance in this respect was at the defendant's request. This forbearance would constitute adequate consideration for a promise on the defendant's part to see that the plaintiff was paid. *Goodnow* v. *Bond*, 59 N. H. 150, 151, and cases cited. Such a promise could properly be inferred from the evidence, the writing of September 5 being read in the light of the negotiations which preceded its execution. *Noyes* v. *Marston*, 70 N. H. 7, 16; *Weston* v. *Ball*, 80 N. H. 275; *Kann* v. *Company*, 85 N. H. 41, 46. On the motion for a directed verdict the plaintiff was of course entitled to have his version of those negotiations accepted as true. *Mason* v. *Andrews, ante,* 277; 2 Hening's Digest, *p.* 1243.

The defendant's undertaking was an original one, founded upon a

new consideration, and not a promise to pay the debt of another within the meaning of P. L., *c.* 327, *s.* 2. *Allen* v. *Thompson,* 10 N. H. 32; *Robinson* v. *Gilman,* 43 N. H. 485, 492, and cases cited; *Lang* v. *Henry,* 54 N. H. 57, 61, 62; *Wills* v. *Cutler,* 61 N. H. 405, 409.

The testimony of an agent is admissible to prove his authority. *Union Hosiery Co.* v. *Hodgson,* 72 N. H. 427, 432; *Clough* v. *Company,* 75 N. H. 84, 86. The treasurer testified "My trustees said unless there was a paper similar to this [the document of September 5] filed they would not make the loan." While the evidence that other banks with which the plaintiff had had similar dealings had "always paid the money over to" him or had seen that "it was paid over" is perhaps insufficient to prove "common usage" (see *New-Hampshire Savings Bank* v. *Ela,* 11 N. H. 335, 341), the jury could at least find that the trustees were bound to assume that the plaintiff, as a reasonably prudent business man, would not release his lien without some assurance from the bank that his account would be paid. That the treasurer in securing the release had authority to make the alleged promise is reasonably to be inferred. *Hanson* v. *Heard,* 69 N. H. 190.

The fact that the plaintiff took a second mortgage on the property in October, 1929, did not conclusively prove that he looked solely to Whitney for payment or waived any of his rights against the defendant. According to his own testimony he took the mortgage merely "as extra protection."

The possibility of a finding that the minds of the parties did not meet remains to be considered. The plaintiff may have concluded from the negotiations that the bank had undertaken to pay him; the bank may have understood that its only duty was to make the loan. If the language used by the plaintiff and the defendant's treasurer was so ambiguous as to be reasonably capable of the differing interpretations, then each would be entitled to insist upon his own understanding, and there would be no contract. 1 Williston, Contracts, *s.* 95. See, also, *Russell* v. *Clough,* 71 N. H. 177; *Fitch Company* v. *Insurance Co.,* 81 N. H. 495, 497; *Eleftherion* v. *Company,* 84 N. H. 32, 34, 35.

In that event, the bank could not use the release to improve its position, and if it advanced only the sum of $1,650 on the strength of the release (the balance of the mortgage debt comprising previous loans), it would be obliged to account to the plaintiff for any value of the mortgaged property in excess of that sum. Nor could it, without such an accounting, repudiate its treasurer's act as unauthorized.

In short, the defendant is entitled to a verdict only upon a finding that the bank did not undertake to protect the plaintiff and that the plaintiff, when he gave the release, understood or ought to have understood that such was the case.

*New trial.*

All concurred.